UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

M. C. and C. M.,

    Plaintiffs,

v.                                        Case No:   6:18-cv-1486-Orl-41TBS

JEFFREY GEIGER and JOHN DOE,

    Defendants.

## ORDER

This case comes before the Court on Plaintiff's Motion for Leave to Proceed Anonymously (Doc. 8). Defendant Jeffrey Geiger has filed a response in opposition (Doc. 32).

## Background[1]

Plaintiffs M.C. and C.M. bring this lawsuit against Defendants Jeffrey Geiger and the unidentified John Doe for infringement of a copyright; civil conspiracy; invasion of privacy by intrusion; invasion of privacy by publication of private facts; intentional infliction of emotional distress; and violation of Florida's Sexual Cyberharassment Law, § 784.049 FLA. STAT. (Doc. 1). When they were college students Plaintiffs occasionally modeled to earn money for tuition (Id., ¶ 20). In 2011, photographer Gregory Coleman took a total of 146 photographs of M.C., some of which show her in lingerie (Id., ¶ 21). M.C. denies that any of these images depict her in the nude, but that Coleman "utilized selective camera and body angles as to make her appear nude" (Id., ¶ 21). M.C. entered into a contractual

---

[1] The Court has not made any findings of fact in this case. It has simply restated the averments in Plaintiffs' complaint (Doc. 1).

agreement with Coleman that barred him from publishing the photographs without her consent or using them for "pornographic or other illicit purposes" (Id., ¶ 22). M.C. denies publishing the photographs or otherwise releasing them online and says Coleman stored them on Zenfolio, a website notoriously susceptible to being hacked (Id., ¶ 23).

Plaintiffs allege that in 2011, the John Doe exploited Zenfolio's vulnerabilities and stole intimate images of M.C. from online photo servers (Id., ¶¶ 3, 24). In 2014 M.C. received messages on Facebook from strangers who commented on the explicit photographs (Id., ¶ 25). "Some of the messages contained screenshots that she recognized as images from the photoshoot with Coleman." (Id.). M.C. searched Google Images and discovered that photographs of her had been posted on other online forums without her knowledge or consent (Id.). She maintains that these images are highly identifiable because her face and distinctive tattoo are visible (Id., ¶ 26). M.C. claims John Doe spent seven years disseminating photographs of her "on various porn sites and invented social media accounts through which he harassed and blackmailed her. When M.C. refused to comply with John Doe's demands for more images, he sent the pictures to people she knew." (Id., ¶¶ 4, 28-29, 31-32). John Doe also allegedly recruited and incited others to harass and threaten M.C. (Id., ¶¶ 4, 29). She says John Doe published her contact information and that she "was inundated with phone calls, text messages, emails, and Instagram, Facebook, and Twitter messages" (Id., ¶ 30).

M.C. began dating Defendant Jeffrey Geiger in 2016 (Id., ¶ 5). They maintained a long-distance relationship which included exchanging "sexual photographs each took of him or herself." (Id., ¶ 37). "M.C. trusted Geiger and it was understood that the pictures were for his private enjoyment only … [and] M.C. did not give Geiger permission to share the images with anyone or publish them at any time." (Id., ¶ 38). According to M.C., these

personal images, along with the Coleman images, were stored in a secure electronic Dropbox, which also contained several images of her twin sister, C.M. "which were inadvertently transferred to this Dropbox account when other devices storing both Plaintiffs' photographs were consolidated there." (Id., ¶ 39).

M.C. alleges that John Doe's harassment persisted and she "confided in Geiger about the tremendous toll the harassment took on her" (Id., ¶ 40). Despite being openly sympathetic, Geiger secretly reached out to John Doe through social media (Id., ¶¶ 5, 40). In 2018, M.C. discovered that there were new, more intimate and revealing images of herself online and as well as images of C.M. (Id., ¶¶ 6, 42-43). Geiger "admitted to having supplied these images to John Doe." (Id., ¶¶ 7, 44). Plaintiffs maintain that neither Defendant had "permission to share, publish, post, or in any way disseminate the intimate images of either plaintiff." (Id., ¶ 8). Plaintiffs allege that Defendants' actions ruined "their careers, families, and mental health." (Id., ¶ 10).

In June, 2018, M.C. obtained a copyright (Registration Number VAu 1-321-341) for the 146 photographs taken of her by Coleman (Id., ¶¶ 33-35).

## Discussion

Federal Rule of Civil Procedure 10(a) mandates that every pleading filed in federal court bear a caption that names all the parties. FED. R. CIV. P. 10(a). Rule 10 is an illustration of the legal axiom that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern" and the integrity of the judiciary is maintained by the public's right of access to court proceedings. Romero v. Drummond Co., 480 F.3d 1234, 1245 (11th Cir. 2007) (citing Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978)). The public's right includes the right to properly identify every party by name. J.W., et al. v. District of Columbia, 318 F.R.D. 196, 198 (D.D.C. 2016)

("One of the defining characteristics of American judicial proceedings is the right of public access. In furtherance of this public interest, the Federal Rules of Civil Procedure require that a complaint include the names of all the parties, FED. R. CIV. P. 10(a) ..."); see K.W., et al. v. Holtzapple, 299 F.R.D. 438, 440 (M.D. Penn. 2014); John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau, 195 F. Supp. 3d 9, 17 (D.D.C. 2016); Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). Rule 10(a) is also rooted in the idea that "[d]efendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not." Plaintiff B. v. Francis, 631 F.3d 1310, 1315 (11th Cir. 2011).

However, "the rule is not absolute. A party may proceed anonymously in a civil suit in federal court by showing that [s]he "has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" Id. at 1315-1316; Doe v. Dominique, Civil Action File No. 1:13-cv-04270-HLM, 2014 WL 12115948, at *4 (N.D. Ga. Jan. 3, 2014). "It is within a court's discretion to allow a plaintiff to proceed anonymously." Doe v. Shakur, 164 F.R.D. 359, 360 (S.D.N.Y. 1996).

In exercising its discretion to decide "whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns," courts consider the specific circumstances of the case and weigh the relevant factors. Francis, 631 F.3d at 1315-1316. The court considers "(1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; and (5) whether the party defending against a suit

brought under a pseudonym would be prejudiced." Shakur, 164 F.R.D. at 361 (citing James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993); Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992)).

Plaintiffs' base their request for anonymity on the second and third Shakur factors. They argue that unless the Court grants relief, they will "be compelled to disclose information of the utmost intimacy … [and involving] matters of a sensitive and highly personal nature[.]" (Doc. 8 at 4). Plaintiffs also argue that if they are required to attach their names to this litigation, there will be "a public record connecting the Plaintiffs' names to the harm and exploitation they have suffered … [which] could result in even more people viewing the very images that were stolen and disseminated without their consent" (Doc. 8 at 5).

The Court considers the Shakur factors in the context of the unique circumstances of this case. See Scott v. Treasury Inspector Gen. for Tax Admin., No. 18-80366-CIV, 2018 U.S. Dist. LEXIS 130825, at *8 (S.D. Fla. July 6, 2018) ("A court must carefully review all circumstances to determine whether the presumption of openness "should yield to the plaintiff's privacy concerns.") (citing Francis, 631 F.3d at 1316); Doe v. Strange, No. 2:15-CV-606-WKW [WO], 2016 U.S. Dist. LEXIS 38248, at *2 (M.D. Ala. Mar. 24, 2016) ("Resolving a motion to proceed anonymously requires examination of all the circumstances surrounding the case … The legal principles governing Plaintiffs' request will be applied to the particular circumstances of the case."); Freedom from Religion Found., Inc. v. Emanuel Cty. Sch. Sys., 109 F. Supp. 3d 1353, 1356 (S.D. Ga. 2015) ("No one factor is 'meant to be dispositive;' rather, it is the court's task to 'review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'"); R.A.

Niles, Case No. 1:15-CV-01314ELR, 2015 U.S. Dist. LEXIS 190584, at *4-5 (N.D. Ga. May 21, 2015).

The photographs have been published on the internet for approximately seven years and have been sent to people M.C. knows. Plaintiffs admit that M.C. can be identified in some of the photographs because her face and a distinctive tattoo are visible. And, John Doe has already published M.C.'s contact information which resulted in her being "inundated with phone calls, text messages, emails, and Instagram, Facebook, and Twitter messages" (Doc. 1, ¶ 30). So, it appears that M.C.'s identity is already known or discoverable. In addition, M.C. copyrighted many of the photographs and the copyright registration is a public document (Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C., 199 F. Supp. 2d 1271, 1294 (M.D. Fla. Mar. 15, 2001)) that clearly identifies her by name.[2] Although C.M.'s identity has not been similarly made public no great stretch is required to identify her through public records as M.C.'s twin sister. Consequently, the Court is not persuaded that Plaintiffs' privacy interests outweigh the public's right of access in judicial proceedings.

## Conclusion

For the foregoing reasons:

(1) Plaintiffs' Motion to Proceed Anonymously (Doc. 8) is **DENIED**;

(2) Plaintiffs have **fourteen (14) days** from the rendition of this Order to file an amended complaint that identifies them by their true, legal names.

---

[2] https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=2&ti=1,2&Search%5FArg=Coleman%2C%20Gregory&Search%5FCode=NALL&CNT=25&PID=vyV_h7FRKltx-ilrGSmDBiAujjak&SEQ=20181210145822&SID=1

**DONE** and **ORDERED** in Orlando, Florida on December 11, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record