# UNITED STATES DISTRICRT COURT
# FOR THE
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

MADISON CONRADIS, an indivudual, and
CHRISTINE MESSIER, an individual,

                Plaintiffs,        Case No. 6:18-cv-1486-Orl-41TBS

vs.

JEFFREY GEIGER, an individual, and
JOHN DOE, an individual,

                Defendants.
_____/

## PLAINTIFFS' AMEDNED COMPLAINT

Plaintiffs MADISON CONRADIS and CHRISTINE MESSIER file this Amended Complaint against JEFFREY GEIGER and JOHN DOE, Defendants herein, and allege the following:

## PRELIMINARY STATEMENT

1. This is a case about the most intimate type of privacy violation – sexual privacy.

2. It's a story of two men, otherwise strangers from one another, coming together to sexually humiliate Plaintiffs.

3. In approximately 2011, John Doe, a man whose identity is yet unknown, unlawfully accessed online photo storage servers from which he stole intimate images of Conradis

4.      For seven years, John Doe disseminated the images of Conradis on various porn sites and invented social media accounts through which he harassed and blackmailed Conradis When Conradis refused to comply with John Doe's demands for more images, he sent the pictures to people she knew.  John Doe would also recruit and incite others to harass and threaten Conradis

5.      When Conradis began dating Jeffrey Geiger in 2016, she confided in him about her years of harassment. Geiger masqueraded as a supportive boyfriend outraged by Conradis' suffering, but secretly Geiger reached out to the social media accounts controlled by John Doe.

6.      In 2018, Conradis was horrified to learn of a new set of intimate images of herself online – more recent and more revealing ones.  The new set featured not just Conradis, but also Conradis' twin sister, Messier

7.      When Conradis confronted Geiger, he admitted to having supplied these images to John Doe.

8.      Neither John Doe nor Geiger ever had permission to share, publish, post, or in any way disseminate the intimate images of either plaintiff.

9.      While the facts of this case may seem titillating – twins, nude images, a wicked boyfriend, sextortion, and an internet troll – the hell that Plaintiffs experienced as detailed herein is deeply serious.

10.     The nonconsensual distribution of intimate images reeks lasting havoc on the lives of its victims – with ruinous impact on their careers, families, and mental health. The nonconsensual distribution of Plaintiffs' intimate images caused them tremendous suffering of exactly this sort.

11. John Doe tried to make Conradis his sex slave by controlling and blackmailing her with images in his possession. When she sought help from her boyfriend, Jeffrey Geiger, he compounded the problem by shockingly supplying John Doe with images of both Conradis and her sister.

12. This case is about unmasking an anonymous internet sadist and holding accountable the individuals who joined forces to sexually humiliate Plaintiffs.

## PARTIES

13. Plaintiff Madison Conradis (hereinafter "Conradis") is an individual over eighteen years of age and presently resides in Melbourne, Florida.

14. Plaintiff Christine Messier (hereinafter "Messier"), Conradis' sister, is also over eighteen years of age and resides in Bradenton, Florida.

15. Defendant JEFFREY GEIGER (hereinafter "Geiger") is an individual over eighteen years of age. Upon information and belief, he presently resides in Lewistown, Maine.

16. Defendant JOHN DOE (hereinafter "Doe") has not yet been identified, thus his physical location is unknown. He is believed to be over eighteen years of age.

## JURISDICTION & VENUE

17. The United States District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C.§ 1338 (copyright), and 28 U.S.C. § 1367 (supplemental).

18. In addition, diversity exists between the identifiable parties to this litigation and this Complaint seeks monetary damages in excess of $75,000, exclusive of interest, costs, and attorneys' fees. The fact that John Doe has deliberately taken steps to conceal

3

his true identity and location should not defeat the existence of diversity jurisdiction in this matter.

19. Venue in this judicial district is proper because complete diversity exists among the parties to this litigation pursuant to 28 U.S.C. § 1332 and because a substantial part of the events or omissions giving rise to this action occurred in this venue pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

20. In 2011, Conradis and Messier, twin sisters, were college students who occasionally modeled professionally in order to earn much-needed money for their university tuition.

21. During the course of their modeling careers, Conradis was introduced to a local photographer named Gregory Coleman. On August 27, 2011, Coleman took a total of 146 photographs of Conradis  Many of Coleman's photographs showed Conradis in sports apparel and other clothing, but a small number of images captured her wearing lingerie or utilized selective camera and body angles as to make her appear nude.

22. Prior to the photo shoot, Conradis executed a contract with Coleman which explicitly stated that none of the images were not to be posted or published publicly absent Conradis' consent and were not to be used for pornographic or other illicit purposes.

23. Conradis neither publicly released the images nor consented to their online posting.  However, they were stored by Coleman on a website called Zenfolio, which was notoriously susceptible to being hacked.[1] The platform has since acknowledged there was

---

[1] *See, e.g.*, https://www.slrlounge.com/forum-hacks-boudoir-gallery-passwords-site-protected/.

also a shortcoming in its security features such that contents of individual pages were indexed by Google, meaning that images were visible in Google searches.

24.     On information and belief, the images were obtained without Conradis' knowledge or consent by John Doe, whose identity is not known, by exploiting these vulnerabilities in the Zenfolio website.

25.     In 2014, Conradis began to receive Facebook messages from strangers commenting on nude photographs of her that they had purportedly seen. The strangers demanded more explicit photos. Some of the messages contained screenshots that she recognized as images from the photoshoot with Coleman. Only from these messages and her subsequent Google image searches did she discover that her intimate images had been posted in various online forums, including 4chan.org and thebarchive.com,[2] without her knowledge or consent.

26.     Conradis discovered that multiple photographs of her were posted in which her face was visible, as was a highly distinctive tattoo. She was frequently identified by name in the postings.

27.     Conradis was distraught to learn that the photographs had been disseminated. She did not know who had obtained the images or how, why that person would post them, whether she knew the individual who had victimized her in this way, or whether this person might intend her physical harm. She didn't know where to turn or who to trust. She feared that the presence of the images on the internet and the unwanted contact

---

[2] 4chan and thebarchive are websites that provide "anything-goes forums" known as image-boards. The defining feature of these websites is that users do not need to pick usernames, thus are functionally anonymous. This anonymity has made them a breeding ground of racism and homophobia. It has also made it a prime distribution network for nonconsensual pornography.

from the harassers who saw them would persist forever. However, the torment caused by the release of these images was only just beginning.

28. Throughout 2015, but with particular intensity in April 2015, Conradis received messages on her Facebook account from John Doe. Doe created Facebook profiles with usernames "gred.destiny.5," "JoeBummerv," and "JoeBummer" and a Twitter account with the handle "@Gregdestiny4" that he used to contact Conradis and demand that she provide additional nude images of herself.

29. John Doe, operating under the usernames he created for this purpose, began to use the images to extort Conradis and to entice others to do the same. In his postings, John Doe encouraged anyone who viewed the images to send messages to Conradis threatening to re-disseminate the images or to send them to Conradis' family and professional contacts if Conradis did not comply with their demands for additional photographs.

30. Worse, John Doe posted Conradis' contact information and implored those acting at his behest to use the information to harass Conradis directly. As a result, Conradis was inundated with phone calls, text messages, emails, and Instagram, Facebook, and Twitter messages commenting on the photos and demanding more of them. She repeatedly changed her phone number and email address and deleted many of her social media accounts to try to make the torment stop.

31. John Doe's threats continued for years, as did the harassment and fear Conradis experienced as a result. Because Conradis refused to comply with John Doe's demands for additional images of her, he retaliated by posting and reposting the intimate images of Conradis from her photoshoot with Coleman.

32. At times, John Doe made good on his threats to cause Conradis even more suffering, including at one point sending a photo in which Conradis appears to be nude to a professional contact of hers.

33. The dissemination of the photographs taken by Coleman has continued unabated until the present. Desperate to find a legal means to stop Doe, Conradis secured the copyright to the photographs that Photographer Gregory Coleman took of her in 2011.

34. At the time the photographs were taken, Coleman retained ownership of the images, subject to terms, conditions and restrictions governed by the original contract signed by Conradis and Coleman. Subsequently, in June 2018, Conradis and Coleman executed an Agreement making both parties joint and exclusive holders of the copyright in the images.

35. Through counsel, Conradis obtained the copyright for the 146 photographs of her taken by Gregory Coleman with the United States Copyright Office. Effective June 28, 2018, she holds the sole copyright to those photographs pursuant to Registration Number VAu 1-321-341.

36. In 2016, Conradis began a long-distance romantic relationship with Jeffrey Geiger, who she knew professionally and met in person at a work-related conference. Because of geographic separation between them, they mostly communicated by phone and email.

37. In the context of their trusting intimate relationship, Conradis. and Geiger exchanged sexual photographs each took of him or herself.

38. Conradis. trusted Geiger and it was understood that the pictures were for his private enjoyment only. Conradis did not give Geiger permission to share the images with anyone or publish them at any time.

39. The intimate images, as well as the photographs of Conradis taken during her various modeling shoots, were stored in a secure electronic Dropbox,[3] The same Dropbox also contained a few images of Conradis' sister, Messier, which were inadvertently transferred to this Dropbox account when other devices storing both Plaintiffs' photographs were consolidated there.

40. During her relationship with Geiger, Conradis continued to suffer the online harassment from Doe and those acting at his behest. Conradis confided in Geiger about the tremendous toll the harassment took on her. Geiger feigned outrage and concern on Conradis' behalf and gallantly said he would find out who controlled these "greddestiny" and "JoeBummer" accounts.

41. Over the years in which her photos were routinely posted without her consent, Conradis and those close to her resigned themselves to regularly monitoring the websites on which the images appeared and conducting searches to check for new postings, in order to be able to contact each site every time and request the removal of the images.

42. In late 2017 or early 2018, Conradis was horrified to discover that photos she had taken of herself and sent to Geiger also began to appear on the very same sites where the photographs taken by Coleman had previously been posted and by the same users who had previously posted them. Images of Messier were now posted there, as well.

---

[3] Dropbox is a cloud-based online storage and file sharing platform.

43. As before, these images were used in an attempt to blackmail Conradis and Messier Doe and strangers who saw these posts contacted Plaintiffs and demanded additional photographs of Plaintiffs. They threatened to further disseminate the images or to share them with specific family members and professional contacts if Plaintiffs did not comply.

44. When Plaintiffs confronted Geiger about how photos that only he and Conradis possessed were now also being posted by John Doe, Geiger admitted that he had contacted John Doe, who employed the now familiar Gmail username "Joe Bummer" and associated Gmail address anonmail4647@gmail.com, and provided Doe with intimate images of Plaintiffs. Geiger shared these images without Plaintiffs' knowledge or consent. He provided documentation of his contact and correspondence with John Doe to Conradis

45. Upon making this discovery, Conradis immediately ended her relationship with Geiger.

46. Defendants' intentional conduct could have no purpose but to cause harm to Plaintiffs. The publication of the private images, use of those images to relentlessly harass Plaintiffs, and dissemination of the images directly to Plaintiffs' family and professional acquaintances caused Plaintiffs to suffer severe emotional and psychological distress.

47. Now thirty-year-old women with graduate degrees and professional careers, Plaintiffs have endured grave fear, extreme embarrassment, the loss of professional opportunities, strain on their personal relationships, and prolonged expense and inconvenience as a result. Both have spent years afraid that their harassers might show up in person and cause them physical harm, worried that the images would be discovered in

their social circles, aware of job offers they did not get or promotions they did not seek because of the knowledge that the images might be discovered by anyone who searched their names, anxious about what their friends and loved ones might be subjected to online at the hands of their offenders, and obligated to routinely troll the internet to locate the offending images and attempt to have them removed despite their certainty that they would shortly reappear once again.

### AS A FIRST CAUSE OF ACTION: INFRINGEMENT BY JOHN DOE OF COPYRIGHT HELD BY CONRADIS

48. Plaintiff incorporates by reference the allegations contained in paragraphs 9 through 29 above.

49. Plaintiff Conradis is the owner of the copyright to the photographs that Photographer Gregory Coleman took of Conradis

50. Under the Copyright Act of 1976, 17 U.S.C. § 106 and subsequent law, only Conradis as the holder of the copyright and the photographer who captured the copyrighted images have the right to reproduce or distribute the images. The photographer's ability to do so is governed by the terms of the original agreement between the parties, including that they not be used for pornographic purposes.

51. Without permission or authority, John Doe obtained, reproduced, and distributed the copyrighted images to the public using various online platforms.

52. Since the initial posting of these images in 2014, Conradis has dedicated hundreds of hours to searching for the sites on which the images are posted, contacting the sites on each occasion, imploring the sites to remove the images, responding when they refuse to, and monitoring the usernames posting the images. Because of the near constant

reposting of the images, this is an ongoing endeavor that continues to require her time and that of those close to her.

53. Despite Plaintiff's ardent and persistent efforts to demand the removal of such images, the unauthorized distribution and publication of the copyrighted images continues today.

54. Plaintiff alleges, upon information and belief, that Defendants willfully and intentionally violated the copyright held by Plaintiff Conradis, with indifference to Plaintiff's rights.

55. As a result of Defendants' infringement of Plaintiff Conradis' copyrights, Plaintiff is entitled to actual damages and statutory damages pursuant 17 U.S.C. § 504(c). Plaintiff is additionally entitled to costs and attorney's fees under 17 U.S.C. § 505.

56. Defendants' conduct has caused Plaintiff to suffer severe and irreparable injury that cannot be adequately compensated monetarily. Plaintiff fears Defendants and fears that they will continue to cause harm to Plaintiff. Accordingly, Plaintiff seeks injunctive relief prohibiting Defendants from further infringing upon Plaintiff's copyrights and ordering Defendants to destroy all copies of the copyrighted images that exist in any form pursuant to 17 U.S.C. § 502 and 503.

### AS A SECOND CAUSE OF ACTION: CIVIL CONSPIRACY

57. Plaintiff incorporates by reference the allegations contained in paragraphs 9 through 29 above.

58. Under federal common law, civil liability for conspiracy "generally requires: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act

performed by one of the parties to the agreement; and (4) the overt act was done pursuant to and in furtherance of the common scheme. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).

59. Defendant John Doe did not merely publish nonconsensual photographs of Plaintiffs and attempt to use those photographs to coerce Plaintiffs, he actively encouraged others, including Defendant Geiger, to join forces with him to do the same.

60. When Geiger contacted Doe using his familiar alias, Doe secured a better-positioned accomplice, an "insider," in Defendant Geiger. Defendant Geiger, despite his knowledge of Doe's longstanding harassment of Plaintiff, agreed in emails and social media exchanges to provide Doe with additional intimate images to which Geiger had access. Geiger contacted Defendant Doe, not just with knowledge of his prior attacks on Plaintiffs, but because of it. He contributed to this campaign of harassment by providing ammunition for it, and in so doing became a participant in it.

61. By contacting Doe and sending the intimate images that he obtained without consent to Doe who then disseminated them online, the two acted together in unlawful acts including the sexual cyberharassment of the Plaintiffs in violation of Florida law, F.S.A. § 784.049, and cyberstalking in violation of federal law, 18 U.S.C. § 2261A

62. When Geiger provided Doe with private photos of Plaintiffs, he knew or should have known that those images would also be posted online and used to further harass and extort Plaintiffs. When he received the images, Doe posted them on the same sites, using the same usernames that he had previously. As such, each Defendant had a clear, contributing role in the conspiracy between them.

63.     As a result of the conspiracy between Defendants, Plaintiffs were damaged in that they suffered severe emotional distress.  They were subjected to harassment, experienced fear, endured extreme embarrassment, lost professional opportunities and prestige, felt strain on their personal relationships, and encountered prolonged expense and inconvenience as a result.

**AS A THIRD CAUSE OF ACTION: INVASION OF PRIVACY BY INTRUSION**

64.     Plaintiff incorporates by reference the allegations contained in paragraphs 9 through 29 above.

65.     Under Florida law, intrusion can consist of "physically or electronically intruding into one's private quarters." *Allstate Ins. Co. v. Ginsberg,* 863 So. 2d 156, 162 (Fla. 2003).

66.     Geiger took advantage of his relationship of trust with Conradis in order to access her Dropbox files without permission.  While some of the images contained therein had been sent to him by Conradis using email or text, she had never authorized him to access or remove images from the Dropbox.  Nonetheless, he pillaged that repository of images of both Conradis and Messier contained in the Dropbox and shared those images with Doe.  The Defendants, acting together, published those images on the internet without the knowledge or consent of either Plaintiff.

67.     After the images were published, Plaintiffs were subjected to harassment at home and work, in the places and amongst the people where they should have felt safest.

68.     Based upon Defendants' posting of the intimate images taken from the Dropbox alongside Plaintiffs' contact information, they regularly received unwelcome and coercive messages via text message, Facebook, and other social media platforms.  These

messages threatened to both broaden the scope of the illegal dissemination of the images, and to deliberately, in a targeted fashion, distribute the images to maximize the negative impact on Plaintiffs. Specifically, harassers, including Defendant Doe, sent images to Plaintiffs' professional contacts and threatened to send them to Plaintiffs' parents, in a message that included a link to their father's Facebook profile.

69.     By publicly disseminating the unlawfully obtained images and Plaintiffs' contact information, Defendants' unleashed an unknown number of individuals who targeted Plaintiffs' on a regular and ongoing basis for more than two years. In so doing, Defendants exposed Plaintiffs to conduct that must be characterized as so "outrageous in character" and "extreme in danger" as to exceed all possible bounds of decency.

70.     As a result of the invasion of their privacy and the intrusion they underwent, Plaintiffs suffered severe emotional distress. They were subjected to harassment, experienced fear, endured extreme embarrassment, lost professional opportunities and prestige, felt strain on their personal relationships, and encountered prolonged expense and inconvenience as a result.

## AS A FOURTH CAUSE OF ACTION: INVASION OF PRIVACY BY PUBLICATION OF PRIVATE FACTS

71.     Plaintiff incorporates by reference the allegations contained in paragraphs 9 through 29 above.

72.     By posting on publicly-accessible websites, like 4chan.org, Defendants made their disclosures about Plaintiffs public. Through their postings, Defendants made Plaintiffs' names, private images, and contact information available to any internet user who googled them or happened upon the websites to which Defendants had posted.

73. Plaintiffs' intimate images of their own nude bodies constituted private facts. That Conradis and Messier had taken intimate photographs and the images themselves constituted sensitive, personal matters that should have been protected by a zone of privacy.

74. Defendants' postings, which contained intimate photographs of Plaintiffs and their contact information, disclosed private facts about Plaintiffs. The photos were not and never would have been publicly available if not for the Defendants' actions. Likewise, Plaintiffs' unlisted telephone numbers and their personal online profile names were not matters of public record.

75. Both the nonconsensual disclosure of intimate images, particularly on exploitative, pornographic sites like 4chan, as well as the public dissemination of Plaintiffs' personal addresses and contact information alongside those images, would be being highly offensive to a reasonable person. In fact, sharing private images without consent is so offensive as to be deemed criminal in Florida, and the majority of other jurisdictions. Publicly disclosing both intimate images and personal contact information is particularly offensive because it makes Plaintiffs physically identifiable and susceptible to being targeted by unknown online offenders.

76. Nothing posted by Defendants was of legitimate concern to the public, as Plaintiffs are not public figures and the content posted about them does not pertain to matters of public interest.

77. As a result of the invasion of their privacy and the publication of their private facts, Plaintiffs suffered severe emotional distress. They were subjected to harassment, experienced fear, endured extreme embarrassment, lost professional

opportunities and prestige, felt strain on their personal relationships, and encountered prolonged expense and inconvenience as a result.

### AS AND FOR A FIFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78. Plaintiff incorporates by reference the allegations contained in paragraphs 9 through 29 above.

79. Defendants deliberately or recklessly inflicted mental suffering upon Plaintiffs. Defendant Geiger did so by exploiting Conradis' trust to obtain photographs of Plaintiffs, seeking out Defendant Doe, their known harasser, and providing him with intimate images of both Plaintiffs without their knowledge or consent. Defendant Doe did so by widely disseminating the intimate images of Plaintiffs that he hacked from Coleman and those that he was given by Geiger, by demanding direct contact and additional intimate images of Plaintiffs and threatening to contact their family members and colleagues directly if that demand was not met, and by encouraging an unknown number of unidentified individuals to contact Plaintiffs directly in order to make unlawful demands and threaten further unlawful dissemination.

80. The conduct of the Defendants described herein was so outrageous as to exceed all bounds of decency and is utterly intolerable in a civilized community.

81. The conduct of the Defendants was intended to and did cause Plaintiffs to suffer severe emotional distress. They experienced harassment, fear, embarrassment, lost professional opportunities and prestige, felt strain on their personal relationships, and encountered prolonged expense and inconvenience as a result.

82. As a result of the emotional distress inflicted upon Plaintiffs by Defendants, Plaintiffs demand judgment against Plaintiffs in an amount to be determined at trial.

## AS AND FOR SIXTH CAUSE OF ACTION: VIOLATION OF FLORIDA'S SEXUAL CYBERHARASSMENT LAW, § 784.049 FLA. STAT.

83. Plaintiff incorporates by reference the allegations contained in paragraphs 9 through 29 above.

84. Florida law prohibits "sexual cyberharassment," which is defined as the publication of "a sexually explicit image of a person that contains or conveys the personal identification information of the depicted person to an Internet website without the depicted person's consent, for no legitimate purpose, with the intent of causing substantial emotional distress to the depicted person." F.S.A. § 784.049(2)(c).

85. Florida's Sexual Cyberharassment law applies if any conduct that is an element of the offense, or any harm to the depicted person resulting from the offense, occurs within the state. § 784.049(7). In the instant matter, Plaintiffs reside in and suffered harm in the state of Florida, so the conduct committed against them violates § 784.049, regardless of Defendants' physical location.

86. Defendants published numerous sexually explicit images of Plaintiffs to websites including Facebook and 4chan on dozens of occasions between 2014 and the present.

87. The images published by the Defendants conveyed the personal identification of the Plaintiffs by depicting the "unique physical representation" of the Plaintiffs. Plaintiffs, through their physical attributes, were readily identifiable in the posted images. Further, Plaintiffs were specifically identified by name in many of the postings that contained their images. § 817.568(1)(f)(2).

88. Neither Plaintiff ever consented to the publication of the images, or their names and personal information.

89.     There was no legitimate reason for posting Plaintiffs' intimate images. By disseminating the intimate images Defendants intended to and did cause substantial emotional distress to the Plaintiffs.  Plaintiffs were subjected to harassment, experienced fear, endured extreme embarrassment, lost professional opportunities and prestige, felt strain on their personal relationships, and encountered prolonged expense and inconvenience as a result of their sexual cyberharassment.

90.     As a result of the Defendants' violation of Florida Statute § 784.049, Plaintiffs are entitled to and demand all appropriate relief, including injunctive relief prohibiting Defendants from engaging in further cyber sexual harassment and ordering Defendants to destroy all copies of any sexually explicit images depicting Plaintiffs in their possession, monetary damages to include $5,000 or actual damages incurred as a result of the violation of this section, whichever is greater, and reasonable attorney fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request relief, as follows:

1.      A preliminary and permanent injunction prohibiting Defendants from posting or otherwise disseminating the photographs at issue pursuant to Florida Statute § 784.049(5)(a).

2.      Compensatory damages in an amount to be proven at trial, in an amount no less than $75,000.00 exclusive of costs, attorneys' fees and interest.

3.      Statutory damages pursuant to 17 U.S.C. § 504 and Florida Statute § 784.049(5)(b).

  4.  Attorney's fees pursuant to 17 U.S.C. § 505 and Florida Statute § 784.049(5)(c).

  5.   Costs of suit.

  6.  Interest on all compensatory, statutory, and exemplary damages.

  7.  Together with such and further relief that this Court may deem just and necessary.

Submitted this the 24th day of December, 2018.

Respectfully submitted,

By: _____
Kai Jacobs, Esq. – Trial Counsel
*Counsel for Plaintiffs*
Florida Bar No. 987336
Kai Jacobs, P.A.
2222 Ponce de Leon Blvd, Suite 300
Coral Gables, FL 33134
Tel.: 305.768.9846
Fax: 305.384.4661
kj@kaijacobs.com

Carrie Goldberg, Esq. (admitted *pro hac vice*)
*Counsel for Plaintiffs*
C.A. Goldberg PLLC
16 Court Street, Suite 2500
Brooklyn, NY 11241
Tel. (646) 666-8908
Fax. (718) 514-7436
carrie@cagoldberglaw.com

Lindsay Lieberman, Esq. (admitted *pro hac vice*)
*Counsel for Plaintiffs*

C.A. Goldberg PLLC
16 Court Street, Suite 2500
Brooklyn, NY 11241
Tel. (646) 666-8908
Fax. (718) 514-7436
lindsay@cagoldberglaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on December 24, 2018, I electronically filed the foregoing with the Clerk of Court by the CM/ECF system.  I further certify that I mailed the foregoing document and notice of electronic filing by first-class mail to the following non-CM/ECF participants: none.

_____
Attorney